UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

TOM FISHER,

Plaintiff,

v.

BUTTE COUNTY; and DOES 1-25, inclusive,

Defendants.

NO. CIV. S-05-0598 WBS KJM
NO. CIV. S-05-0600 WBS KJM

MEMORANDUM AND ORDER RE: ATTORNEYS' FEES AND COSTS

TOM FISHER,

Plaintiff,

v.

BUTTE COUNTY; BUTTE COUNTY COURTHOUSE; SUPERIOR COURT OF CALIFORNIA, COUNTY OF BUTTE; and DOES 1-20, inclusive,

Defendants.

----oo0oo----

Plaintiff brought this action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 794, and California Government Code §§ 4450 et seq., alleging a violation of his

civil rights. The parties entered into a settlement, and plaintiff now seek attorneys' fees, litigation expenses, and costs.

I. Factual and Procedural Background

Plaintiff Tom Fisher is a disabled individual, confined to a wheelchair as a result of childhood polio. (Mot. for Attys' Fees 2.) On November 3, 2003, plaintiff visited the Butte County Veterans' Service Office Building ("Veterans' Building"), and encountered numerous obstacles to accessing the building's facilities and services, including: inability to find a van-accessible parking space, difficulty traversing from the parking lot to the building, difficulty opening the excessively front door, an excessively high service counter, and improperly designed bathrooms that resulted in minor injury and a "humiliating urination incident." (Id. at 3.) On July 7, 2004, plaintiff returned to the Veterans' Building and again faced similar difficulties. (Id.)

On April 1, 2004, plaintiff visited the Butte County Courthouse (which shares the same parking lot with the Veterans' Building), and encountered numerous similar obstacles to the buildings services and facilities, including: difficulties finding van-accessible parking, improperly constructed ramps into the building, an excessively heavy front door, an excessively high service counter, and improperly configured bathrooms, which led to another "humiliating urination accident." (Id. at 4.) On August 26 and September 15, 2004, plaintiff filed complaints for damages with the County of Butte, stemming from his visits to the Veterans' Building and the Butte County Courthouse, respectively.

(Barbosa Decl. Exs. 1-2.)

Upon receipt of plaintiff's tort claims, defendants' counsel Brad Stephens, Deputy County Counsel for Butte County, responded by letter on October 18, 2004. (Stephens Decl. Ex. 1.) Though lacking in any reference to damages, the letter addressed each of plaintiff's noted violations, pointing out what improvements had since been made (or would soon thereafter be made) to remedy the problems.[1] (Id.) On February 11, 2005, plaintiff's counsel Patricia Barbosa visited the Veterans' Building and Butte County Courthouse with an expert access consultant, Barry Atwood of Accessible Environments, Inc., in order to assess the validity of plaintiff's claims and evaluate the changes noted by Stephens. (Barbosa Decl. ¶ 5.)

On March 14, 2005, Barbosa sent a letter to defendants with a settlement demand. (Barbosa Decl. Ex. 3.) The letter sought $15,000 in damages, and requested injunctive relief for the barriers Fisher encountered, as well as various miscellaneous statutory violations (not mentioned in plaintiffs claims to the county) that Atwood uncovered during his visit. (Id.) The letter also contained a demand for attorneys' fees and costs, in the amount of $32,910, and professed a desire to settle the litigation before a federal complaint was filed. (Id.)

On March 17, 2005, Stephens responded to Barbosa's March 14 letter, noting that the attachments to her letter had not been transmitted. (Stephens Decl. Ex. 1.) Stephens also indicated that because plaintiff's letter contained new

[1] Plaintiff observes that this letter constituted a "rejection" of plaintiff's claims. (Barbosa Decl. ¶ 5.)

allegations of noncompliance, not referenced in the previous claims filed by Fisher, the letter was being forwarded to the County's Department of Facilities Services, as well as an independent ADA consultant, for evaluation. (Id.) He noted that he expected to respond in substance to their settlement demand in "a couple of weeks." (Id.) Nonetheless, eight days later, on March 25, 2005, plaintiff filed two complaints in this court alleging violations of the ADA, the Rehabilitation Act of 1973, and similar California statutory authority.[2] (Compl.)

On May 4, 2005, defendants responded by letter to plaintiff's March 14 settlement demand. (Barbosa Decl. Ex. 4.) The letter addressed each access barrier encountered by Fisher, as well as those later discovered by the Atwood, noting which problems had been corrected or would be fixed in the future.[3] (Id.) As to the issue of damages, defendants offered three thousand dollars ($3,000.00) to plaintiff in compensatory damages, as well as five thousand dollars ($5,000.00) to plaintiff's counsel to settle outstanding attorneys' fees and costs. (Id.)

Plaintiff declined this settlement counteroffer, and

---

[2] While the two parallel cases addressed by this order are not technically related cases, (June 23, 2005 Order), both actions are essentially the same in substance, both were resolved by a singular settlement agreement, and all filings related to this motion were filed identically, under both cases. For these reasons, the court now considers them together in one order.

[3] Plaintiff takes issue with defendants' response to some of the newly discovered access barriers, in which defendants promise that "[t]he County will make its programs and services accessible." Defendants argue that such a promise is so vague and ambiguous as to make it "impossible to enforce any settlement" entered into on that basis. (Barbosa Decl. ¶ 6.)

went forward with the litigation.[4] The parties attended a settlement conference before Magistrate Judge Kimberly Mueller on November 29, 2005, at which they reached a tentative conceptual agreement on injunctive relief. (Stephens Decl. ¶ 5.) The parties agreed to resolve these terms before possibly returning for a second settlement conference to discuss damages. Meanwhile, plaintiff served discovery on defendants in late December. In March, 2006, defendants served settlement offers on plaintiff pursuant to Rule 68, which plaintiff accepted. (Austin Decl. Ex. 7.)

By agreement of the parties, the settlement offers were incorporated into stipulations for dismissals of both cases before this court. (Rein Decl. Exs. 8-9.) According to the agreement, defendants agreed to provide substantial injunctive relief to remedy existing barriers, and to pay plaintiff $8,002.00 in compensatory damages ($4,001.00 for each case). (Id.) The settlement also dictated that plaintiff was "entitled to recover reasonable attorney's fees and costs, if any, as provided by law." (Id.) Pursuant to that provision, plaintiff now brings a motion to recover $127,083 in attorneys' fees and $8,372 litigation expenses and costs.

///

///

///

[4] The court notes with some confusion the impossibility of Barbosa's assertion that "due to defendants' unreasonable position . . . plaintiff declined defendants' counter-offer and filed his two federal complaints. . . ." (Barbosa Decl. ¶ 6.) Both federal complaints were filed on March 25, 2005, almost 6 weeks before defendants' May 4, 2005, counteroffer.

II. Discussion

A. Right to Attorneys' Fees and Costs

The ADA permits the "prevailing party" to recover attorneys' fees, expenses, and costs. 42 U.S.C. § 12205; Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002). According to the Ninth Circuit, a party prevails "when he or she enters into a legally enforceable settlement agreement against the defendant." Id. In this case, defendants do not appear to dispute that the settlement agreements entered into by the parties, and incorporated into the stipulations for dismissal, establish that plaintiff is the "prevailing party" for the purposes of attorneys' fees under the ADA.

Both parties note that attorneys' fees are available under both the ADA, as well as applicable California statutes. (Mot. for Attys' Fees 8.) Defendant does so in an effort to import a California requirement, followed by some California courts, that unless a plaintiff provides "pre-litigation notice of intent to sue," and gives defendant a reasonable opportunity to cure the violations, attorneys' fees shall not be awarded. (Opp'n to Mot. for Attys' Fees 5.) Because plaintiff is entitled to recover fees under federal law, however, the court need not consider such a state requirement. See Botosan v. Paul McNally Realty, 216 F.3d 827, 832 (9th Cir. 2000) (holding that notice is not required).

Plaintiff raises state attorneys' fees law in an attempt to make use of a multiplier utilized by California courts in some instances. The court recognizes that there are differences between state and federal law with regard to

multipliers for attorneys' fees. See Mangold v. Cal. Public Utils. Comm'n, 67 F.3d 1470 (9th Cir. 1995) (noting that a contingency fee multiplier is available under California's fee-shifting statutes, but not under similar federal statutes); Weeks v. Baker & McKenzie, 63 Cal. App. 4th 1128, 1172 (1998) (noting that a fee enhancement may be appropriate for some cases in which the "public impact of the results" warranted creating incentives for representation). Because plaintiff would be entitled to fees under California statutory law, notwithstanding federal entitlement under the ADA, the court will also consider these factors in making any adjustments to the award.

B. Lodestar Calculation

The court determines the amount of attorneys' fees to award by using the lodestar calculation - the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Under federal law, there is a strong presumption that the lodestar amount is reasonable. Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 n.4 (9th Cir. 2000). However, the court may adjust the federal lodestar figure if various factors overcome the presumption of reasonableness. Hensley, 461 U.S. at 433-34.

The court may adjust the lodestar figure on the basis of the Kerr factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances,

> (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Morales, 96 F.3d at 363 n.8. (citing Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)). Many of the Kerr factors have been subsumed in the lodestar approach. Id. (citing Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1988)). Moreover, the court should consider the factors established by Kerr, but need not discuss each factor. Sapper v. Lenco Blade, Inc., 704 F.2d 1069, 1073 (9th Cir. 1983).

1. Hours Reasonably Expended

"Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." Hensley, 461 U.S. at 434. When the hours worked or the rates claimed are not supported by evidence or adequate documentation, the district court may reduce the award accordingly. Id. at 433. Plaintiff submits detailed billing records for three plaintiff's attorneys who worked on this matter: Patricia Barbosa submits bills totaling 124.3 hours; Paul L. Rein submits bills totaling 101.2 hours; and Julie McLean submits bills totaling 101.1 hours.[5] (Barbosa Decl. Ex. 8; Rein Decl. Ex. 13; McLean Ex. 1.) Paul Rein and Julie McLean additionally submit bills totaling 20.2 and 21 hours, respectively, for work done since the filing of the

---

[5] According to plaintiff's motion, Paul Rein billed a total of 105.2 hours and Patricia Barbosa billed a total of 125.4 hours. (Mot. for Attys' Fees 24.) The invoices submitted, however, reflect totals of 101.2 and 124.3 hours, respectively, which the court will abide by.

original motion. (Supplemental McLean Decl. Ex. 1; Supplemental Rein Decl. Ex. 1.)

a. Pre-Litigation Efforts

Defendants' primary objection to plaintiff's current motion for attorneys' fees is based on the belief that the "same results could have and should have been obtained without litigation." (Opp'n to Mot. for Attys' Fees 10.) In essence, defendants argue that plaintiff's attempts to reach a pre-litigation settlement were a sham, citing as evidence the similarity between the October 18, 2004, pre-litigation settlement offer, and the eventual Rule 68 offers accepted in March, 2006. (Id. at 7-8.) Defendants thus assert that any fees and costs which accrued after a viable reasonable settlement might have been reached should not be awarded. Defendants' argument, however, is without merit. The fact that the injunctive relief that was ultimately settled upon closely resembled early offers is of no consequence. A civil rights plaintiff may recover attorneys' fees even for an unsuccessful stage of litigation, provided that the unsuccessful stage was a necessary step toward her ultimate victory. Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991).

Plaintiff obtained substantial relief as a result of the settlement reached in the two cases at issue--including damages and court-enforceable injunctive relief remedying all barriers that plaintiff encountered during his three visits. In the October 18, 2004, letter, no mention was made of damages, whereas settlement of the litigation ultimately yielded statutory damages in the amount of $8,002.00 for plaintiff. Moreover,

additional injunctive relief was achieved, beyond those access barriers addressed in the October 14 letter, such as signage and an electric door for the Veterans' Building. (Opp'n to Mot. for Attys' Fees 7-8.) Defendants argue that plaintiff should have given them a chance to remedy the violations before filing a federal complaint. However, as noted above, there is no requirement under federal law that plaintiff notify defendant before bringing suit. Botosan, 216 F.3d at 832.

In addition, defendants argue that in light their continuing willingness to settle, plaintiff's repeated failure to do so constitutes an unnecessary inflation of attorneys' fees and costs. Plaintiff, however, was under no obligation to settle with defendants on their terms. While this court is sympathetic to the difficulties defendants encountered in achieving a final settlement, plaintiff cannot be denied attorney's fees for continuing to litigate a case, rightly brought, based on the parties' inability to reach an accord.

b. Apportionment of Work to Superior Court of California

While both the Veterans' Building and the Courthouse are owned by Butte County, which is thus responsible for the physical configuration of each building, plaintiff was required to add as defendant the Superior Court of California, which operated the Courthouse and is responsible for policy changes therein. (Mot. for Attys' Fees 5.) The Superior Court of California, however, was dismissed as a defendant by stipulation of the parties, and plaintiff concedes that any work done directed against that party will not be compensated. (Id.)

Plaintiff contends that 5% of the overall work done was directed specifically at the Superior Court, while defendants assert that the percentage is closer to 33%. (Id.; Opp'n to Mot. for Attys' Fees 10-11.)

In arriving at 33%, however, defendants appear to confuse the distinction between all work related to the Courthouse case (including physical access barriers attributable to Butte County), and work done specifically against the Superior Court of California as a party. Plaintiff's sole argument against the Superior Court of California (which was solely responsible for policy issues at the Courthouse) demanded that the Superior Court to adopt a written policy as to how disabled persons would be served at a lowered counter at the Courthouse. Because of the limited scope of this issue, and its early dismissal, the court will accept as reasonable plaintiff's estimate of a deduction of 5% in fees.

c. Disallowance for Particular Motions

Defendants' attorneys' fees expert, James Schratz, argues that plaintiff's counsel billed an unreasonable amount for its preparation of the motion for summary judgment and this motion for attorneys' fees. (Schratz Decl. 17.) With regard to the motion for summary judgment, which was never filed in this case, the court is sympathetic to the fact that the work done was made superfluous by the eventual settlement. However, it would be unreasonable for defendants to expect plaintiff's counsel to halt all work in an ongoing litigation to await the results of repeatedly unsuccessful settlement efforts.

Taken together, plaintiff's counsel expended over 70

hours solely on the present motion for attorneys' fees, which this court finds to be excessive. As Mr. Rein and colleagues' declarations make clear, plaintiff's counsel has decades of experience prosecuting disability access claims. Such a wealth of experience should no doubt increase the efficiency with which they are able produce a motion for fees and costs.

Moreover, neither this motion, nor defendants' opposition, presents any novel or complicated issues of law--clearly plaintiffs' attorneys need not reinvent the wheel each time they seek to recover fees. Indeed, upon reviewing plaintiff's counsels' motion for attorneys' fees in a case previously before this court, Millard v. La Baer Inn, et al., CIV. S-03-1468 slip op. at 18 (E.D. Cal. Apr. 7, 2005), the court notes that over half of the language in plaintiff's present motion is copied verbatim therefrom. Accordingly, the court will reduce the hours worked on this motion by 50%, for a total of 35.95.[6]

d. Internal Conferencing

Defendants, through their expert Mr. Schratz, assert that the 44.8 hours spent on general conferencing between plaintiff's attorneys is excessive and should be reduced. Mr. Rein spent 16.3 hours conferencing; Ms. Barbosa spend about 15.8 hours conferencing; and Ms. McLean spent about 12.7 hours doing the same. Excessive conferencing between attorneys is grounds

[6] For work on this motion, the time records indicate totals in the amount of: 40.6 hours for Mr. Rein, 6.9 for Ms. Barbosa, and 24.4 hours for Ms. McLean. Accordingly, the court will reduce counsels' hours by 20.3, 3.45, and 12.2, respectively.

for reducing fees. Kona Enters. v. Estate of Bishop, 1999 U.S. Dist. LEXIS 22853 (D. Haw. Apr. 6, 1999). As noted above, it is beyond dispute that plaintiff's attorneys have a wealth of experience specializing in this exact type of litigation. Moreover, this case does not present any complicated or novel issues of law--indeed, defendants never even contested the existence of the access violations noted. The only real continuing dispute was what settlement amount the parties would agree to, and this court finds it hard to believe that necessitated 44.8 hours of conferencing. The court will therefore allow only 5 hours of conferencing per attorney.[7]

2. Reasonable Rate

To determine the reasonableness of hourly rates claimed, the court looks to the prevailing market rates in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation. Blum v. Stenson, 465 U.S. 886, 895 (1984); Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986). Under federal law, the relevant community is generally the forum in which the district court sits as opposed to where counsel is located. Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).

This court is mindful of the need to avoid setting an hourly rate so low as to discourage competent attorneys from handling this type of case. On the other hand, the court must recognize that the hourly rate at which counsel should be

---

[7] Accordingly, Mr. Rein's hours will be reduced by 11.3; Ms. Barbosa's will be reduced by 10.8; and Ms. McLean's hours will be reduced by 7.7.

compensated is determined by the forces of the marketplace, i.e. by the law of supply and demand.  One way of making that determination would be to look to the hourly rates which the attorneys in this case are able to bill and collect from clients in other, similar cases.  But counsel here acknowledges that he has never billed or collected a fee directly from any client.  The court must thus look elsewhere to determine the reasonable hourly rate that defendants should be required to pay for the services of plaintiff's attorneys in this case.

Plaintiff's counsel seeks a compensation rate of $395 per hour for Mr. Rein, $375 per hour for Ms. Barbosa, and $250 per hour for Ms. McLean.  (Mot. for Attys' Fees 24.)  In support of this rate, Mr. Rein cites several cases from the Northern and Central Districts of California where such a rate has been approved.  While the court is aware of Mr. Rein and Ms. Barbosa's extensive experience, in this district $250 per hour has been found to be the prevailing rate for even the most experienced attorneys.  See, e.g., Millard v. La Baer Inn, et al., CIV. S-03-1468 slip op. at 18 (E.D. Cal. Apr. 7, 2005) (where this court previously applied a rate of $250 for Mr. Rein and Ms. Barbosa, and a rate of $225 for Ms. McLean); White v. GMRI, Inc., CIV. S-04-0620 slip op. at 16 (E.D. Cal. Jan. 19, 2006) (where this court applied the same rates for highly experienced counsel).

This is based on the fact that these rates generally prevail in the Sacramento area, where this court sits.  Loskot v. U.S.A. Gasoline Corp., No. 01-2125, slip op. at 11 (E.D. Cal. Apr. 26, 2004) (applying those same rates); see also Sanford v. Thrifty Payless, Inc., No. 02-480, 2005 WL 2562712, at *4 (E.D.

Cal. Oct. 11, 2005) (same); Hiram C. v. Manteca Unified Sch. Dist., No. 03-2568, slip op. at 3 (E.D. Cal. Nov. 5, 2004) (same).[8] Thus far, the court has observed no shortage of competent attorneys in this district who are willing to handle cases of this type at these rates.

At oral argument, Mr. Rein repeatedly highlighted his superior expertise in this field, which he contended should justify a departure from the standard rate awarded in this district. Importantly, the determination of a reasonable rate must consider prevailing market rates for "similar work" performed by comparable attorney's in the district. White, CIV. S-04-0620 slip op. at 9-10 (citing Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1997)). The present case is not markedly different or more complex than any number of similar cases brought by other plaintiff's attorneys in this district. From the very outset, the issues in this case were simple and straightforward, and did not require any great level of expertise.

This case did differ in one significant respect from other similar cases routinely brought in this court, in that it involved public entity defendants, which necessarily required some expertise in the filing and processing of county administrative claims. That procedure is not especially complex,

---

[8] Plaintiff argues that paragraph 15a of Mr. Schratz's declaration should be stricken, as it contains impermissible legal conclusions regarding appropriate billing rates. Because the court need only look to the local community and relevant case law to determine the prevailing market rate, the court does not rely on this portion of Mr. Schratz's declaration and plaintiff's objection is immaterial.

and many lawyers in this district are awarded $250 per hour or less in cases against county entities which involved the processing of administrative claims as a prerequisite to bringing suit in this court. However, a case such as this one involving both claims under the ADA and the filing of administrative claims with the county was somewhat unique, justifying an adjustment in the hourly rate generally awarded.

Accordingly, the court will adjust Mr. Rein's and Ms. Barbosa's hourly rate from $250 to $275. However, the court will reduce Ms. McLean's billing rate to $225 per hour, given Ms. McLean's relative inexperience compared to Mr. Rein and Ms. Barbosa, as well as this court's recent determination that such a rate is proper. Id.[9] In making this adjustment, the court wishes to emphasize that it does not signal an intent to increase the hourly rate to be awarded to other attorneys or in other ADA cases. Every extra dollar awarded to plaintiffs' attorneys is a dollar that comes out of the pockets of the business people of this community, in this case the County taxpayers. The hourly rate allowed here is the result of the peculiar circumstances of this case.

3. Adjusting the Lodestar Amount

a. Unsuccessful Claims

---

[9] Defendant Butte County filed objections to the declarations of John Poswall and Christopher Whelan, submitted by plaintiff in support of the present motion in an effort to support their proposed hourly rate. The court need not address these objections, because it finds these two declarations to be of negligible value in determining an appropriate rate, and thus affords them minimal weight. Both Mr. Poswall and Mr. Whelan are well known to the court, and because of their specialized skills in areas not involved here, they are able to bill and collect at much higher hourly rates than for the kind of work involved here.

Defendants contend that not all of the claims in the lawsuit were successful, and thus an award of attorneys' fees should be adjusted downward accordingly according to Kerr. In support of this argument, defendants cite to: 1) the lack of an agreement as to a written policy about services at the lowered windows in the Courthouse; and 2) various "Miscellaneous Barriers" listed at both buildings which remain unremedied. The issue regarding a written policy at the Courthouse was the issue litigated against the Superior Court of California--the court has already determined that a 5% deduction is proper.

With regard to the "Miscellaneous Barriers" cited in plaintiff's March 14, 2005, letter, it is true that the Kerr factors allow the court to consider "(8) the amount involved and the results obtained." Kerr, 526 F.2d at 70. However, the simple fact that plaintiff agreed to make concessions in reaching a settlement agreement does not change the fact that plaintiff is the prevailing party, and entitled to attorneys' fees. Id.; Barrios, 277 F.3d 1128. Moreover, this circuit disfavors consideration of subsumed reasonableness factors after the lodestar has been calculated. Morales, 96 F.3d at 364 n.9. In light of the damages awarded and the injunctive relief achieved, which remedied all barriers encountered by plaintiff during his three visits to the sites in question, the court declines to make a downward departure based on this factor.

    b. Contingent Risk

Plaintiff seeks an upward adjustment of the lodestar amount (or the application of a multiplier) based on "(5) the contingent nature of the fee agreement." Morales, 96 F.3d at 363

n.8; see also Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (2001). First, it bears repeating that, as above, the Ninth Circuit disapproves of consideration of subsumed Kerr factors after the calculation of the lodestar amount. Morales, 96 F.3d at 364 n.9. In addition, it does not appear that plaintiff's counsel were undertaking any great risk in pursuing this litigation. As early as the October 14, 2004, letter (5 months before a complaint was ever filed), defendants admitted the existence of almost all of the barriers encountered by plaintiff. Given such a posture by Butte County, this court finds it hard to believe plaintiff's counsel were at great risk of going uncompensated for their efforts. The court thus declines to apply a multiplier on this basis.

c. Public Interest Purpose

Plaintiff also seeks an upward adjustment of the award based on some California courts' recognition of the value of providing incentives to attract competent counsel to handle cases that are in the public interest. Ketchum, 24 Cal. 4th 1122; Serrano v. Priest, 20 Cal. 3d 52 (1977). However, this court believes plaintiff's counsel will be adequately compensated for their work by the rates set forth in this order. Moreover, the substantial number of attorneys specializing in the area of disability law illustrates that sufficient competent counsel are being attracted to this area of law. Mr. Rein's declaration additionally highlights this fact, as it demonstrates the great number of cases which Mr. Rein has successfully taken on and won. (Rein Decl. ¶¶ 32-47.) The court thus declines to apply a multiplier or upward adjustment on this basis.

C. Costs

Rule 54(d)(1) of the Federal Rules of Civil Procedure and Local Rule 54-292(f) govern the taxation of costs to losing parties, which are generally subject to limits set under 28 U.S.C. § 1920. See 28 U.S.C. § 1920 (enumerating taxable costs); Fed. R. Civ. P. 54(d)(1) ("costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ."); L.R. 54-292(f); Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987) (limiting taxable costs to those enumerated in 28 U.S.C. § 1920).

Defendants object to "approximately $8,000 in expert costs based solely on counsel's declarations that the expenses were incurred." (Opp'n to Mot. to Attys' Fees 11.) Contrary to defendants' assertion, plaintiff has submitted documentation for some of its costs, but the burden is on the fee applicant to submit proper documentation for all fees sought. Hensley, 461 U.S. at 434. Any inadequately documented fees may be subtracted from an award. Id. The court agrees that several of the submitted costs lack sufficient documentation.

Specifically, plaintiff seeks $1,511 for "copying costs, photos," but this court only finds documentation in the amount of $29.56 ($11.98 for two disposable cameras and $17.58 for development). This expense will thus be reduced by $1,481.44. Plaintiff also seeks reimbursement for Federal Express charges in the amount of $211, but this court only finds documentation in the amount of $147.13. This expense will thus be reduced by $63.87. Finally, plaintiff seeks $209 in miscellaneous "travel/lodging/parking" expenses, but this court

only finds documentation in the amount of $9.00. This expense will thus be reduced by $200.00. Plaintiff's request for $8,327.00 in expenses and costs will therefore be reduced by a total of $1,745.31.

III. Conclusion

In accordance with the foregoing discussion, attorneys' fees, litigation expenses, and costs are awarded in the following amounts:

| | | | | |
|---|---|---|---|---|
| Mr. Rein | 121.4 hrs (-31.6) | x $275/hr | = | $24,695.00 + |
| Ms. Barbosa | 124.3 hrs (-14.25) | x $275/hr | = | $30,263.75 + |
| Ms. McLean | 122.1 hrs (-19.9) | x $225/hr | = | $22,995.00 = |
| | | | = | $77,953.75 - |
| (Work against Superior Court of Cal.) | | | 5% | ($3,897.69) = |
| | | | | --------------- |
| (Attorneys's Fees Subtotal) | | | = | $74,056.06 + |
| Expenses | $8,327.00 - $1,745.31 | | = | $6,581.69 |
| | | Total | = | **$80,637.75** |

IT IS THEREFORE ORDERED that plaintiff's motion for attorneys' fees and costs be, and the same hereby is, GRANTED in the total sum of **$80,637.75.**

DATED: December 15, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE